UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RUBINA GUL**,

           Plaintiff,

v.

**ANTONY J. BLINKEN**, *et al.*,

           Defendants.

Case No. 1:24-cv-00787 (TNM)

## MEMORANDUM OPINION

Rubina Gul is a Pakistani citizen who wishes to come here on a tourist visa. But she says the Government refused to issue her one. Instead, it left her application languishing in "administrative processing" for nearly two years. She thus sued a bevy of federal officials, claiming that a decision on her visa has been unreasonably delayed and demanding an answer. Because the Government has, in fact, given her an answer, the Court will dismiss this case.

**I.**

Rubina Gul is a Pakistani resident and national. Compl. ¶ 7, ECF No. 1. She applied for a B-2 Nonimmigrant Tourist Visa and sat for a visa interview in September 2022. *Id*. ¶¶ 7, 19. Gul alleges that, at the end of that interview, she "was informed that her Visa Application had been approved."[1] *Id*. ¶ 19. She alleges that just after that interview, and despite the prior approval, she was informed that "her Visa Application was being placed in mandatory administrative processing." *Id*. ¶ 20. She also alleges that since that time, "Defendants have not

---

[1] Gul cites an exhibit attached to her Complaint as support for the claim that she was informed her visa had been approved. *See* Compl. ¶ 19. But that exhibit is simply a receipt confirming she had successfully scheduled her interview. *See* Ex. A, ECF No. 1-1. She later supplied a different exhibit, which she may have meant to cite. *See* Sec. Ex. A, ECF No. 10-1. But the Court may not consider such late-breaking materials in deciding a motion to dismiss. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

. . . completed the adjudication of her Visa Application" and that her application "continues to be pending." *Id*. ¶¶ 21, 24.

But that is not so. In her Complaint, Gul provided her visa's Application ID number. Ex. A at 3, ECF No. 1-1. That ID number can be used to verify her visa status on the State Department's online Visa Status Check service. *See Visa Status Check*, U.S. Dep't of State, https://ceac.state.gov/CEACStatTracker/Status.aspx. The Court may take judicial notice of the website at the motion-to-dismiss stage without converting the motion into one for summary judgment. *Mont. Green Party v. Jacobsen*, 17 F.4th 919, 927–28 (9th Cir. 2021); *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). That website unambiguously shows that Gul's application was "adjudicated and refused" by, at latest, April 2023. *See Visa Status Check* (stating, in large, blue print, "Refused," and then "Case Last Updated: 28-Apr-2023," "A U.S. consular officer has adjudicated and refused your visa application."). Her briefing admits as much, albeit indirectly. Opp'n to Mot. to Dismiss (Opp'n) at 30, ECF No. 10 (conceding that "her visa Application . . . has been dispositioned by Defendants as 'refused.'"). So a final decision has, in fact, been rendered on her application.

In March 2024, Gul sued several federal Defendants (collectively, State), alleging that they had unreasonably delayed a decision on her application. She sought relief under 5 U.S.C. § 706(1), asking for an order that they complete adjudication of her application. Compl. ¶¶ 28–39. State now moves to dismiss.

## II.

State moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). Under either, the Court "assume[s] the truth of all material factual allegations," *Am. Nat'l Ins.*

*Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up), and asks whether those allegations, if true, permit a suit to be maintained.

For Rule 12(b)(1), Gul's allegations must, if true, establish each element of standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). That is, the Complaint must plausibly allege that (1) Gul "has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent,"; (2) that "injury is fairly traceable to the challenged action of the defendant"; and (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Mass. Coal. for Immigr. Ref. v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ---, 2023 WL 6388815, *6 (D.D.C. 2023).

For Rule 12(b)(6), her allegations must permit the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court's review under Rule 12(b)(6) is less searching than that under Rule 12(b)(1). The question here is only whether Plaintiff has made out a plausible claim against the Defendants. *Id*. No more, no less.

### III.

Start with State's standing arguments, then look at the merits. State's arguments largely founder on standing. But on the merits, they succeed.

### A.

State first argues that two Defendants, the Secretary of State and the Assistant Secretary for the Bureau of Consular Affairs, are improperly named and cannot give Gul any relief. Mot. to Dismiss (Mot.) at 5, ECF No. 9. That is true. Congress has, by law, divested most federal officials of the authority to oversee visa decisions. *Sedaghatdoust v. Blinken*, --- F, Supp. 3d ---, 2024 WL 2383228, *2 (D.D.C. 2024). Neither the Secretary nor the Assistant Secretary falls

within the narrow class of "consular officers" who are entitled to make visa decisions. *Id*. Gul therefore lacks standing to sue them. *Id*. But several other Defendants remain.

As to *those* Defendants, State argues that Gul has not suffered a cognizable injury. State claims that the substantive harm Gul invokes is "an inability to travel to the United States and apply for admission." Mot. at 8. Not so. She has instead pointed to "significant financial and emotional burdens" that stem from "the unreasonable period of time that the Visa Application has been in pending status." Compl. ¶ 27. So State's extensive discussion of noncitizens' lack of a constitutional right to enter the country, Mot. at 7–13, is simply off-point. Financial injury is a quintessential cognizable injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

Nowhere in its motion does State engage with Gul's actual standing arguments or explain why they are wrong. Instead, it conflates merits limitations on judicial review with elements of Article III standing. *See Yaghoubnezhad v. Stufft*, --- F. Supp. 3d ---, 2024 WL 2077551, *4 (D.D.C. 2024) (discussing the same error by State). To the extent that consular nonreviewability poses a barrier to Gul's suit, the Court takes it up later, separate from State's jurisdictional challenge. *See U.S. Dep't of State v. Muñoz*, --- U.S. ---, 2024 WL 3074425, *5 n.4 (2024).

State makes a final standing argument, alleging that the injury Gul alleges is not redressable by a Court order. That is incorrect. It is not the law—nor has it ever been the law— that the remedy for a failure to follow procedure must change the outcome of the decision. *Nat'l Parks Cons. Ass'n v. Manson*, 414 F.3d 1, 5 (D.C. Cir. 2005) ("[T]he case law relieves the plaintiff of the need to demonstrate that (1) the agency action would have been different but for the procedural violation, and (2) that court-ordered compliance with the procedure would alter the final result."); *see also Lujan*, 504 U.S. at 572 n.7; *accord Mass. Coal.*, 2023 WL 6388815, at *7. Rather, it has long been settled that "[a]ll that is necessary is to show that the procedural step

was connected to the substantive result." *Sugar Cane Growers Coop. v. Veneman*, 289 F.3d 89, 94–95 (D.C. Cir. 2002).  So State's final argument against standing fails outright.

B.

Now, the merits.  Here, Defendants' arguments find firmer footing.

First, Gul's claims are foreclosed by the doctrine of consular nonreviewability.  Under that doctrine, once a consular officer decides "to admit or exclude an alien," that decision "is final and conclusive." *Muñoz*, 2024 WL 3074425, at *5.  Courts then have "no role to play." *Id*.  "[T]hus, as a rule, the federal courts cannot review" "a consular officer's denial of a visa." *Id*.  The Government has decided Gul's visa application:  It has denied it.  *Supra* Part I.  That ends the matter.  The denial "is conclusive in this Court and cannot be disturbed by judicial decree." *Sedaghatdoust*, 2024 WL 2383228, at *4.

Second, Gul's claims fail because the Government has fulfilled the only duty it owes her.  Ordinarily, to compel action under 5 U.S.C. § 706(1) or through a writ of mandamus, a plaintiff must identify an unfulfilled nondiscretionary duty that the defendant owes her. *Sedaghatdoust*, 2024 WL 2383228, at *3.  Here, "the *only* duty that the statute or regulations impose on consular officers is a duty to grant or refuse a visa." *Id*.  That duty has been performed—Gul's application has been refused.  *Supra* Part I.  State has no further duty "to engage in post-refusal reconsideration of the visa application." *Sedaghatdoust*, 2024 WL 2383228, at *3.  Thus, State has fulfilled the only obligation it owes Gul, and mandamus will not lie against it.

Last, even if Gul's application remained pending, the delay in her case is not yet unreasonable.  Courts assess the reasonableness of an agency delay under the six so-called *TRAC* factors. *Telecommunications Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984).  Broadly speaking, those factors look at the length of the delay relative to any

congressionally imposed benchmark (factors one and two), the nature and extent of the prejudice from the delay (factors three and five), and the effect of expediting the agency action on other agency priorities (factor four). *Id*. There is also a sixth "factor," which amounts to an admonition that courts need not find bad faith to find unreasonable delay. *Id*.

No prong favors Gul. Start with the first two. Congress has not supplied a benchmark for the Government to decide visa applications. *Sedaghatdoust,* 2024 WL 2383228, at *4. So there is no objective measure of "unreasonableness" to be had. More, the delay Gul complains of here is shorter than many others that courts in this district have found reasonable. *Yaghoubnezhad*, 2024 WL 2077551, at *11 (collecting cases). So these factors favor State.

Next, the third and fifth. These also favor State. Gul identifies emotional and financial consequences stemming from the delay of her application. Because these injuries are chiefly economic, rather than going to "human health and welfare," these factors do not favor her. *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999). Although emotional injuries are welfare-related, a mere desire to visit another country—even the United States—is hardly the type of emotional injury courts have traditionally credited. And in any case, even if these factors went in Gul's favor, it still would not save her Complaint. *Da Costa v. Immigr. Inv. Prog. Off.*, 80 F.4th 330, 344 (D.C. Cir. 2023).

Now, the fourth. This factor "strongly disfavors" Gul. *Sedaghatdoust*, 2024 WL 2383228, at *4. Gul requests only individual relief. That means that issuing a writ of mandamus would simply put her application ahead of others, which have potentially also been pending for several years. This kind of "line jumping" is presumptively disfavored, and courts are loath to facilitate it. *Id*. So this factor, too, tilts for State.

Gul insists she is not seeking to jump the line. Opp'n at 29–30. *But see id*. at 31 ("If[] there is any queue here in the government's system, the Plaintiff should certainly be at the front of such a queue."). But her argument here is built on speculation. She says, for instance, that there is no proof that her "visa Application is not already at the front of the line." *Id*. (cleaned up). Perhaps not. But the Circuit has not required such evidence. Instead, the Circuit has precluded the granting of individual relief in unreasonable delay cases in which—assuming the Plaintiff is *not* at the head of the queue—granting her relief would result in line jumping. *See Da Costa*, 80 F.4th at 343–44. In no case the Court is aware of has the Circuit required specific evidence of a plaintiff's place in the queue.

Finally, on the sixth factor, Gul has posited no bad faith by the Government. Such an allegation is unnecessary for her to prevail. *TRAC*, 752 F.2d at 80. But still the absence of any such allegation prevents this factor from pointing in her favor.

In sum, none of the *TRAC* factors favor Gul. Her claim therefore fails on the merits.

## IV.

At this point, a final digression is warranted. Gul's Complaint contains multiple material misstatements that are difficult to square with judicially noticeable facts. She stated that "Defendants have not . . . completed the adjudication of her Visa Application." Compl. ¶ 21. She said that her "Visa Application now continues to be pending." *Id*. ¶ 24. And that Defendants have "fail[ed] to adjudicate the Visa Application." *Id*. ¶ 26; *see also id*. ¶ 35 (alleging Defendants have "not ma[de] a decision on Plaintiff GUL's Visa Application"); *id*. ¶ 37 (alleging Defendants have "failed to carry out the adjudicative functions delegated to them"); *id*. ¶ 38 (alleging Defendants have "willingly and unreasonably delayed and have refused to adjudicate" the application). The State Department's Visa Status Check website shows these

statements to be false, and it also shows that their falsity could have been known for almost a year before this case was filed. *Compare* Compl. (filed Mar. 18, 2024), *with Visa Status Check* ("Case Last Updated: 28-Apr-2023," "A U.S. consular officer has adjudicated and refused your visa application.").

Those misstatements matter. On at least one issue, they could have been outcome-determinative. After all, recall that consular nonreviewability bars judicial review of a State Department decision denying Gul's visa application. *See Sedaghatdoust*, 2024 WL 2383228, at *3. But it is an open question whether consular nonreviewability would apply at all, were her application still pending. So counsel's misstatements could have avoided application of the consular nonreviewability doctrine and thereby turned a loss into a victory, at least on that issue. To be sure, her Complaint still would have failed for other reasons. But the Court is concerned about the strategic advantage that Gul's misstatements could have secured her.

The Court has already once admonished Gul's attorney for nearly identical misstatements in another case. *See Sedaghatdoust*, 2024 WL 2383228, at *1 n.1. At that time, the Court gently "remind[ed] counsel of their duty of candor." *Id*. That decision was issued over a week before counsel filed her Opposition here. *Compare id*. (May 23, 2024), *with* Opp'n (June 3, 2024). But counsel took no steps to clarify her factual misstatements in this Complaint.

Federal Rule of Civil Procedure 11(b)(3) provides that "[b]y presenting to the Court a pleading, . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*[,] . . . the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3) (emphasis added). It is far from clear how

"an inquiry reasonable under the circumstances" would have permitted counsel to suggest, as she did here, that Gul's application had never been adjudicated.

More, counsel practices law in Indiana. The Indiana Rules of Professional Conduct provide that "[a] lawyer shall not knowingly make a false statement of fact or law to a tribunal or *fail to correct* a false statement of material fact or law previously made to the tribunal by the lawyer." Ind. R. Prof. Cond. 3.3(a)(1) (emphasis added). The D.C. Rules of Professional Conduct provide much the same. D.C. R. Prof. Cond. 3.3(a)(1). There is no evidence here that counsel's misstatements and omissions were "knowing[]." Ind. R. Prof. Cond. 3.3(a)(1); D.C. R. Prof. Cond. 3.3(a)(1). Still, it is concerning that the Court's prior admonishment failed to encourage counsel to verify her factual contentions here. The Court therefore warns counsel one last time to be scrupulously candid in her statements to the Court going forward.

She has been given two free passes; she should not expect a third.

**V.**

The Court will grant State's Motion to Dismiss. A separate Order will issue today.

Dated: July 11, 2024                                    TREVOR N. McFADDEN, U.S.D.J.

9